35943. UNITED STATES FIDELITY & GUARANTY CO.
et al. v. ROSSER.

DECIDED JANUARY 10, 1956.

Bryan, Carter, Ansley & Smith, M. D. McLendon, for plaintiff in error.

Emmett O. Dobbs, Jr., contra.

NICHOLS, J. 1. There was testimony that the deceased began work at 7 a. m. on the day in question and continued working until approximately 11:20 a. m., at which time he stated to a fellow employee that he was a little too hot and was going to get a drink of water. At the time he left to go and get the water he was perspiring. At approximately 11:30 a. m. he was found on a loading ramp some 60 feet away from where he had been working having suffered the attack that later took his life. The work of the deceased had consisted in the banding of steel. The steel was brought by a crane or fork lift over to a work bench where the deceased would take a ¾″ steel band and wrap it around the steel, pull it tight with a bander, pinch the band to seal it in place and then cut the surplus steel band from the bundle. A crane or fork lift would then remove the bundled steel from the work bench.

The medical testimony was vague and inconclusive as to whether or not the exertion of the work being done by the deceased on the morning of the attack caused the attack. Dr. Alfred O. Colquitt, Jr., the only physician testifying at the hearing, testified that he examined the deceased after the attack and be-

fore he died, that the deceased had arteriosclerosis, which is hardening of the arteries and apparently he had had a rupture of a vessel in his head. He stated further that, "Physical exertion is not *necessarily* a factor for these people,—because they (hemorrhages) can happen in their sleep,—as was true of the President of the United States. . . Unquestionably it (the hemorrhage) must have started sometime during that morning, there, yes," but, it was possible that the hemorrhage began after he had stopped work and started to get the drink of water. (Italics ours).

The contention of the employer and insurer is that the attack did not begin until after the deceased had stopped his work and gone to get the drink of water, and that the work done by the deceased on the day of the attack was not sufficiently strenuous to cause the attack; whereas the claimant contends that the attack started while the deceased was working and that he went to get a drink of water because of the attack, and that the work caused the attack.

There was sufficient evidence to authorize the finding that the attack began while the deceased was performing his work, and that the work being performed by him was sufficiently strenuous to cause the attack. Therefore, the evidence did not *demand* a finding that the attack began after the deceased had discontinued his work and gone to get a drink of water. See in this connection, *Hartford Accident & Indem. Co.* v. *Waters,* 87 *Ga. App.* 117 (73 S. E. 2d 70) and cases cited. See also, *Atlanta Transit Co.* v. *Knight,* 92 *Ga. App.* 469 (88 S. E. 2d 738) ; *White* v. *St. Paul-Mercury Indemnity Co.,* ante p. 124.

Under repeated rulings of this court, when there is any evidence to support the findings of the full board, its award can not, in the absence of some error of law appearing, be reversed. *Bituminous Casualty Corp.* v. *Wilbanks,* 68 *Ga. App.* 631 (23 S. E. 2d 519) ; *Harper* v. *National Traffic Guard Co.,* 73 *Ga. App.* 385 (2a) (36 S. E. 2d 842) ; *Pepperell Manufacturing Co.* v. *Mathis,* 92 *Ga. App.* 85, 88 (88 S. E. 2d 201). Accordingly, in the present case the superior court did not err in affirming the award of the full board.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*